UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH T. MEYER,<br><br>    Petitioner,<br><br>    v.<br><br>M. E. SPEARMAN, Warden,<br><br>    Respondent. | Case No.: 1:13-cv-00284-JLT<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE FILE<br><br>ORDER DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |

In 2011, Petitioner was convicted of residential burglary and the court found true that he had a prior conviction and prison term for the same violation. (Lodged Document ("LD") 8). He was sentenced to a determinate term of 17 years. Id. In this action, Petitioner claims the prosecutor committee a Brady[1] violation which requires reversal of his conviction; the Court disagrees.[2]

**I.     Background**

The Court adopts the relevant portion of the statement of facts outlined in the 5th DCA's unpublished decision[3]:

---

[1] Brady v. Maryland, 373 U.S. 83 (1963)
[2] Petitioner's direct appeal to the California Court of Appeals, Fifth Appellate District (the "5th DCA"), was affirmed. (LD 8). His petition for review and subsequent state habea action, filed in the California Supreme Court, were summarily denied. (LD 10; LD 11; LD 12).
[3] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

1

Isaiah Rios was asleep in his house when a loud noise emanating from the kitchen area woke him. When he went to investigate, he saw two men run out of the house through the door leading into the garage and then out through the garage. He could not identify the perpetrators. It appeared they had kicked open the door from the garage into the house.

While on his early morning bicycle ride, Mark Fife observed Meyer and Contreras (collectively, defendants) sitting on a bench in the park. Fife noticed them because he often was in the area at that time of the morning and it was unusual to see anyone. About 15 minutes later he saw the men a second time, this time on the street on which Rios lived. When Fife looked back, he saw the men looking over the fence, which looked suspicious to Fife. Fife turned around and saw the men disappear behind the fence.

Fife felt the whole episode was suspicious. He did not have a cell phone, so he rode back to his house and then drove his vehicle back to the area. As he drove by the area in which he had last seen defendants, Fife saw them jump over a fence. Fife stopped his vehicle and both defendants ran right in front of his vehicle. As they passed, each looked directly at Fife. Fife attempted to follow defendants and called the emergency number for assistance.

Fife identified defendants later that morning after the police placed them in custody.

(LD 8).

## II.   Discussion

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B.   Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker,

501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether the state court recognized the error and reviewed it for harmlessness).

### III.   Review of Petitioner's Claim.

The instant petition itself alleges a single claim for relief:

> Petitioner was denied due process of law under the sixth and fourteenth amendments to the U.S. Constitution because in the interest of justice mandate that petitioner be granted reversal because the right is the right of petitioner to be convicted upon proof beyond a reasonable doubt.  The prosecutor withheld material evidence that was potentially exculpatory which violated petitioner's state and federal due process rights.

(Doc. 1, p. 6).

A.   Exhaustion.

Preliminarily, Respondent contends that the sole issue in this case has not been exhausted in state court.  The Court agrees.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state and gives the state court the initial opportunity to correct the alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  The petitioner must have specifically told the state court that he was raising a federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.

1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998). Where none of a petitioner's claims have been presented to the highest state court, the Court must dismiss the petition. Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); Jiminez v. Rice, 276 F.3d 478, 481 (9th Cir. 2001).

Petitioner did not raise this claim on direct appeal. In his state habeas petition filed in the California Supreme Court, Petitioner alleged as follows:

> [T]he government failed to turn over a police report regarding an in-field identification that could have been used to either impeach a witness, or to make an offer of reasonable doubt in the proceedings. (RT 149-153). The evidence related to an in-field identification, where the in-field witness identified one address, and at trial, the witness identified a second address. The testimony of the witness was taken before the evidence was turned over to the defense, and the defense was harmed by this constitutional failure. The officer included in his report that the witness said, after being admonished, he was 100% certain of the facts he gave the officer, but at trial came up with a different set of facts ([record citations]. The government admitted it was their error (RT 151).

(LD 11, p. 3). The state supreme court summarily denied the claim with citations to People v. Duvall, 9 Cal.4th 464, 474 (1995), and In re Swain, 34 Cal.2d 300, 304 (1949). (LD 11-12).

Under California law, a citation to Duvall or Swain indicates that a petitioner has failed to state his claim with sufficient particularity for the state court to examine the merits of the claim, and/or has failed to "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." Duvall, 9 Cal.4th at 474.

In Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986), the Ninth Circuit found that the Swain citation indicated that the claims were unexhausted because their pleadings defects, i.e., lack of particularity, could be cured in a renewed petition. Kim, 799 F.2d at 1319. The Ninth Circuit stated that it was "incumbent" on the district court, in determining whether the federal standard of "fair presentation" of a claim to the state courts had been met, to independently examine the petition made to the California Supreme Court. Id. at 1320. "The mere recitation of In re Swain does not preclude such review." Id. Indeed, the Ninth Circuit has held that where a prisoner proceeding pro se is unable to meet the state rule that his claims be pleaded with particularity, he may be excused from complying with it. Harmon v. Ryan, 959 F.2d 1457, 1462 (9th Cir. 1992)(citing Kim, 799 F.2d at 1321). "Fair presentation" requires only that the claims be pleaded with as much particularity as is practicable. Kim, 799 F.2d at 1320.

Here, as Respondent correctly observes, Petitioner failed to include in his petition to the

5

1  California Supreme Court the actual police report that he contends was not provided to him during the
2  discovery process and that was prejudicial to the defense's case.  Petitioner failed to provide also
3  excerpts of the trial transcript upon which he relied.  Petitioner did not explain to the Court why he was
4  did not provide those important documents with his petition.  Rather, Petitioner made some generalized
5  comments about the content of the police report that was not turned over to the defense and then made
6  the leap to concluding that the failure to provide the defense with that report was prejudicial.  However,
7  without providing the state court with specific information about the nature of the facts contained in the
8  police report, it was impossible for the state court to determine (1) whether some kind of state or federal
9  violation had occurred; and (2) whether such violation, if established, was actually prejudicial.  Had
10 Petitioner included this documentation in the petition or filed an amended petition with those
11 documents and transcripts attached, it is probable that the state supreme court could have reached the
12 merits of the claim.  Since Petitioner did not do this, the state court's citation to Duvall and Swain was
13 appropriate and the claim remains unexhausted.  Kim, 799 F.2d at 1319.

      B.      Merits - Prosecutorial Misconduct

           1.      Federal Standard.

Due process requires that the prosecution disclose exculpatory evidence within its possession. Brady v. Maryland, 373 U.S. 83, 87 (1963); Cooper v. Brown, 510 F.3d 870, 924 (9th Cir.2007). There are three components of a Brady violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281–82 (1999). See also Banks v. Dretke, 540 U.S. 668, 691 (2004); Silva v. Brown, 416 F.3d 980, 985 (9th Cir.2005).

           2.      Analysis

As discussed above, there are three components of a Brady violation.  Assuming the second component has been demonstrated, Petitioner still must satisfy the other two requirements; he does not.[4]

---

[4] When, as here, it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim *de novo*. Stanley,

Petitioner claims that the report about Fife's identification, prepared and authored by Officer Powell, is exculpatory because of its impeachment value.  Petitioner argues, in essence, that in the report Fife states that he was 100% sure of the information he had given police officers concerning the activities of Petitioner and his co-defendant at the time of the in-field identification, yet at trial Fife was equivocal about much of his testimony, some of which appears to be inconsistent with statements he made in the police report.  Based upon those inconsistencies, Petitioner seems to argue that, had the report been turned over to the defense, counsel could have impeached Fife with the fact that he said he was 100% sure at the time of the in-field identification but was less certain at trial.

While, in theory, this might be a colorable argument for the impeachment value of the Fife report, the manner in which Fife's testimony actually unfolded at trial undercuts Petitioner's argument.  After Fife testified to seeing Petitioner and his co-defendant, Contreras, twice jump over a gate to a residential back yard, and later seeing them run in front of his vehicle, and then seeing them a fourth time when he was brought to the in-field identification, Fife acknowledge on cross-examination that his memory was flawed in a number of respects.  For example, Fife recalled seeing Contreras wearing sunglasses when he hopped the fence, but could not recall him wearing sunglasses when he ran in front of Fife's vehicle. (RT 1, p. 105).  Fife testified that, at the time of the crimes, he was one-hundred percent sure of his identification of Petitioner and Contreras, and that he told police officers that fact. (RT 1, pp. 108; 115). On cross-examination by Petitioner's counsel, Fife again admitted that he had been 100% sure of the identification of Contreras at the time of the in-field identification, but that, at trial, he was not so sure.  (RT 1, p. 128).

Later, outside the presence of the jury, Petitioner's counsel noted that he had just realized that Officer Powell, who was scheduled to testify but had taken ill, had authored a supplemental police report in which Fife indicated that he was 100% certain of the information he had given Powell. Defense counsel argued that non-disclosure of this supplement report was "highly prejudicial" to the defense because counsel had not had a chance to review the report prior to trial and that Petitioner

---

633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.2003). Because Petitioner's single claim herein was rejected by the California Supreme Court on procedural grounds, no reasoned opinion exists regarding the merits of his claim.  Accordingly, the Court will review the claim *de novo*.

7

1  might have agreed to a plea bargain had he realized that Fife was so certain of his identifications.  (RT
2  1, p. 150).  The prosecutor indicated that it appeared the report, which was separately stapled, had
3  inadvertently not been turned over to the defense along with all of the other documents.  (Id., p. 151).
4  The prosecutor offered to make Officer Powell available to the defense and suggested that the officer
5  be ordered by the judge to talk to the defense and cooperate with counsel.  (Id., p. 152).  The trial court
6  continued the matter to the following morning, at which time it was agreed that Officer Powell, who
7  was still ill, would not testify for the prosecution and that his report would not be offered into evidence.
8  (RT 1, pp. 157-160).  The attorneys were admonished not to make any reference to why Powell was not
9  testifying.  (Id.).  The transcript suggests that the parties and counsel felt that this approach resolved
10 everybody's concerns regarding the failure to disclose the supplement report authored by Powell.[5]

11  Now, however, Petitioner asserts he is entitled to a new trial based on the prosecution's failure
12 to timely provide a copy of that report to the defense.  As alluded to earlier, it is difficult to conceive
13 how the contents of this report would be exculpatory based on its impeachment value.  Fife was
14 *actually* impeached numerous times during cross-examination, and, on multiple occasions, he reiterated
15 that he was unsure at trial about specific observations he had made to police months earlier at the time
16 of the incident although he was 100% sure of his identification at the time.  Under cross-examination,
17 Fife retreated from his conviction of being 100% sure of the identifications of Petitioner and Contreras
18 to being unsure of his identification of Contreras at trial.  Reasonable jurors could certainly conclude
19 that, if Fife were unsure of his identification of Contreras at trial, he might also be unsure of his
20 identification of Petitioner as well.

21  In any event, it is difficult to see how being able to reference Powell's written supplemental
22 report during the cross-examination of Fife would have made that cross-examination more effective
23 since Fife mentioned, on several occasions, that, at the time of the events, he had been 100% certain but
24 was less certain at trial.  In sum, the defense derived as much impeachment value from the cross-
25 examination of Fife as they possibly could, without the written report, and the Court cannot see how the

---

[5] The apparent satisfaction of Petitioner's counsel with the manner in which the trial judge handled the non-disclosure issue raises an important question whether counsel's initial objection, based on non-disclosure, had now been withdrawn.  The record is unclear.  However, because the Court concludes that the issue is without merit, the Court will presume the claim has been preserved.

8

availability of that written report during cross-examination would have enhanced that impeachment in the eyes of the jurors.  Thus, the Court finds Petitioner did not suffer any prejudice.

Notably, Petitioner does not renew his attorney's contention at trial that, had he known of Fife's "100%" claim in the Powell report, he might have considered taking a plea bargain instead of going to trial.  Instead, he contends that the report would have enhanced counsel's ability to impeach Fife.  However, as discussed previously, given Fife's ready admission that, at trial, he had retreated from his "100%" confidence level, no further impeachment value could be derived simply by reference at trial to the written police report.  Thus, Petitioner has failed to meet two of the three prongs of the requirement for establishing a Brady error.  Strickler v. Greene, 527 U.S. at 281–82.  Hence, his claim must be rejected on the merits.

In addition, the Court declines to issue a certificate of appealability.  A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  According to 28 U.S.C. § 2253, the court may issue a certificate of appealability only when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability.  Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

## **ORDER**

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1. The petition for writ of habeas corpus (Doc. 1), is DENIED with prejudice;
2. The Clerk of the Court is DIRECTED to enter judgment and close the file;

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

| Dated: **May 28, 2015** | **/s/ Jennifer L. Thurston** |
|---|---|
| | UNITED STATES MAGISTRATE JUDGE |